May it please the Court, Amy Van Horn for Plaintiff Appellant, and I'd like to reserve two minutes for rebuttal. All right. Please watch the clock. Your Honors, this case revolves basically around two issues. Whether or not plaintiff has objectively shown medically determinable impairment, and also whether or not the ALJ properly rejected lay witness testimony regarding his various limitations. And the record shows that his treating physicians have tested him over and over and over and have been unable to figure out what unifying problem is causing his array of neurological problems. But they found over and over that he has weakness, that he has trouble with coordination. They've tested him and found that his falling and his problems with his hands have lasted over time. They've treated him extensively with canes and TENS units and have tested him extensively with spinal taps, multiple MRIs, multiple EKGs. And none of these doctors have said that he's imagining symptoms or that they're not caused by something. Well, that's not quite right. There are about four or five doctors who, in the course of their opinions, state that they thought he was either faking or exaggerating or doing things like that that suggest that symptoms were not genuine. I think there were four or five doctors who said that. Let me clarify, Your Honor. I'm talking about his treating physicians for his neurological impairments. And plaintiff concedes definitely that in his distress, he exaggerates symptoms when he's in. And these are all examining Social Security exams that you're talking about. These exams are ones that he's sent to by Social Security. And the expert, the psychological expert at the hearing said, this is a cry for help. He's increasingly, he's completely out of control in every aspect of his life. And this is his way of showing that he needs help. And it's not helpful to him in any way. But his actual treating physicians who see him over time and observe his symptoms have said that he definitely has neurological problems and they're trying to figure out what it is. And they suspect a myelinating disorder, which generally take years to diagnose. And the second issue is that there are many, many people in the record who have observed his problems over time. And if we were relying solely on plaintiff's own testimony, it would be a very difficult case. But we have his son who says that he watches his father fall almost every day and is very worried for his safety. His girlfriend who's moved in with him for the same reason, because she's afraid to leave him alone. His friend who says that they worked together for years and he watches him fall and can't get back up and needs help to get back up. And these are all opinions that the ALJ gave no reason to reject. He merely said, I've considered the letters and that's it. Are those opinions? Well, they're, I'm sorry, they're observations by the lay witnesses. Well, the regulation says that your symptoms such as pain, fatigue, shortness of breath, weakness or nervousness will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. Now, in this case, is there any evidence of medical science or laboratory findings to show that a medically determinable impairment was present? Well, yes, by both Dr. Goslin, a treating physician, and Dr. Nulliver. They both have found, Dr. Goslin wrote a letter stating that he has difficulty with fine motor coordination in his hands and she has found, let's see, okay, so Dr. Nulliver found definite right hand weakness on exam on May 19th, 2000, that's at excerpt of record 436. Examining physician Chemicholi also found possibly some distal hand thinning and in regard to his legs, also there's extensive findings that he has, Dr. Goslin found decreased strength in all of his muscle groups, marked weakness in the distal lower extremities, foot inversion and eversion three out of five, meaning five meaning full strength, three out of five meaning three-fifths strength. And over repeated exams, he's not able to walk properly, he's positive, had a positive Romberg sign, this is when you stand still and close your eyes and lose your balance. And these exams are all consistent and Dr. Nulliver, sorry, made very similar findings. He found a constellation of neurological problems including spasticity, pain, fatigue, numbness with tingling and dysesthesia and a positive Lamy-Tay phenomenon where a pain. Can you also say that extensive testing has not disclosed any medical basis, any medical science to explain the impairment? Well he said that they have not figured out what's causing his problems but he has shown objective abnormalities and that's what the regulations require. He doesn't, it's true that they don't know what's causing his problems and diseases like his take years to diagnose and their notes are for themselves and for each other and they're all saying to each other we've tested him extensively, we don't know what's causing this. And that's common. Dr. Nulliver stated that that was not unusual to not have proof of what causes a disease like this. They're incredibly hard to diagnose. But it's not the case that they've not had objective findings of his abnormalities. They've had extensive findings and those do cause limitations in his ability to use his If the diagnosis is multiple sclerosis, you wouldn't necessarily diagnose that with an x-ray would you? No I don't think so your honor but I think multiple sclerosis, at least these doctors say that it's diagnosed by a process of elimination and that's why it often takes five years to discover that's what it is because there's no, well I don't think there are many objective tests for it and they're definitely not sure that that's what he has. But I'd also like to say that in a record like this where these doctors treat him over and over and over with these intrusive tests and with lots of medication and braces and canes and physical therapy, it shows that they believe he has these impairments. In cases where people think that someone, all of these physical problems are in their head, they recommend that they get psychological treatment and that's not in these records. These doctors are concerned, they're very concerned about what's wrong with him and Dr. Nillever, he has a disabled parking permit and Dr. Nillever said that he needs a lifeline because so that if he falls while he's alone, he can get medical help and these are the opinions of doctors who believe that their patient is seriously ill. I'll reserve the rest of my time. Thank you. Good morning, your honors. Jamala Edwards for the commissioner. This case is really about the role that subjective complaints have in a social security case. Although subjective evidence is really important to the overall case and the overall evidence, it just cannot substitute for objective evidence. Falling down is subjective? It is if doctors have suggested that he's faking a fall or as you mentioned or if the only evidence that you have of that is your family members and although family members can provide good evidence and good observations, at the same time, the ALJ found that the plaintiff was very self-limiting in his actions. But what you're saying is there's no question about the fact that he from time to time falls down, we just don't know why. Is that what you're saying? Correct, correct. There has been numerous tests and numerous doctors, but no diagnosis has been shown and objective findings are simply not enough without a diagnosis to establish a medically determinable impairment and to move on. Who is in authority for that statement? I'm looking to the regulations at 20 CFR 404-1508 and 416-908. 404-1508? Yes. And 404? 416-908. 416-908. 404-1508 and 416-908. And I believe 404-1528 also flushes that out a little bit. Okay. Okay. And when you look to the regulations, it says signs, symptoms, and laboratory diagnostic techniques are necessary to establish a medically determinable impairment. Now, if someone could just come with objective findings, or I wouldn't really say objective findings, but come to their doctor and say, I have pain. I have a tendency to fall down. I have, as Mr. Ukolov said here to Dr. Goslin, said, I have a limitation on my hands. Well, that wasn't really an opinion by Dr. Goslin, but merely a recitation of what Mr. Ukolov was saying his symptoms are. Now, if that was all that was required to move on in the evaluation process and to find disability, well, then we would have disability benefits being paid out right and left. There needs to be a connection between the symptoms and the signs and an actual diagnosed impairment. You see that in all cases. Even in something like fibromyalgia, we have trigger points. In back pain, we usually have an injury or lumbar disease or degenerative dystrophy. Something to connect it, not just signs and symptoms without any diagnosis. And that's what we have here in this case is Mr. Ukolov going to different doctors, alleging that he has pain, self-limiting himself, and doctors not being able to find anything. Now, these might be very supportive doctors who really do want to help Mr. Ukolov and find something. And that's why they've ordered these tests and given him the benefit of the doubt. But under the Act and under the regulations, we simply cannot, regarding hands and his legs, we cannot find a medically determinable impairment if the doctors have not found anything. Now, regarding... You're saying then that you need something like an x-ray or a blood test or something like that to support the diagnosis? Well, something, an actual diagnosis, like for example with fibromyalgia, there's trigger points that point to a diagnosis that the doctor... that he doesn't know specifically, but says it's consistent with multiple sclerosis. Do you know of any test, an MRI, a CAT scan, an x-ray that's going to diagnose multiple sclerosis if this doctor is correct? No, I don't, Your Honor. I do believe that... A person can be totally incapacitated from multiple sclerosis and not qualified for benefits because you can't find some medical test that will substantiate the diagnosis. Well, as Ms. Van Horn said, I do believe it is a diagnosis of last resort or exclusion. And if the doctor has actually found that diagnosis and given that diagnosis to his patient, then the agency would look at that. But as you read the regs, if that doctor doesn't have some objective test to support the diagnosis, you know, you can work by exclusion. And just as the person dies, you say, yeah, they're sick. But it seems to me that someplace along the way, you should get to a supportable impairment. Right. Objective findings are signs, symptoms, and laboratory findings. But what the real crux is, is not whether the objective findings are like a blood test or an X-ray or what the context of the objective findings. I believe the real crux is that a diagnosis has been established based on the doctor's expertise and looking at the universe of objective findings, whatever that may be. Dr. Nillever just spoke too soon or should have been more positive given what he had to work with rather than saying honestly, look, we've done all these tests and it's consistent with something like multiple sclerosis, but I really can't tell right now. I believe Dr. Nillever said on transcript site 419 and 420 that he found no multiple sclerosis, that the signs and symptoms were not consistent with that. So and he said he admitted the test had not been able to establish a neurological diagnosis as of yet. So perhaps this- But the ALJ quoted him as saying his clinical symptom complex, nevertheless, is most suggestive of demyelinating disease such as multiple sclerosis. But he didn't make that diagnosis, but he said that's what it's consistent with. So the doctor was just there too early, I guess. Perhaps. And perhaps his case just isn't right for us, for the agency, yet for Social Security benefits. That's what the sequential evaluation process is for. There is a weeding out process to look at each step, whether someone has the necessary requirements to meet the medically determinable impairments. Here, all the doctors found was essentially normal, essentially normal findings on everything. And let's see here. Even Dr. Nillever found decreased hand strength, but that was in a grip test. Now, that's also a subjective test. In the mental psychological evaluations, numerous tests showed over endorsement, exaggeration. He was given a GAF of 75. His testing was inconsistent with his presentation. And regarding his lay witness statements, Mr. Uklov, while he may really believe that he is disabled or has these impairments, it's been noted in the opinions that he's really invested in finding himself disabled and limited. And I'm sure that his family feels the same way. And so the ALJ did give germane reasons to reject the lay witness statements on page, I think it's page 38 of the excerpts of records. Are there any more questions? If there's not, thank you. Thank you. Big bottle. Thank you, Honor. When symptoms show such as neurological symptoms like this, doctors such as neurologists, Dr. Nillever is a neurologist, he's an expert, what they observe in the office is objective evidence. These tests that they give that show weakness, these are objective tests. SSR 96-4 says when symptoms manifest themselves as an, quote, anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical sign rather than a symptom. I'm not sure your opponent disagrees with that, but Ms. Edwards says what you need to do is take all that into account and have a diagnosis that she says is lacking in this case. Well, Dr. Nillever diagnosed neurologic dysfunction. He said that there is definite neurologic dysfunction and I can't figure out which disease is causing it. That is a diagnosis. He may not. Disability determination or opinion by the doctor. He wrote a letter and it's referred to at page 20 of the opening brief, to whom it may concern. This is where he states that Plano's condition is most suggestive of demyelinating disease such as multiple sclerosis. This is a January 9 letter. That's right. It's ER 459 when he wrote that Plano is significantly limited in mobility and gait and wears bilateral ankle support. So his diagnosis is definite. He said definite neurological. But he didn't say he's disabled. No, he did not. But the ALJ rejected all of these limitations. The ALJ needed to accept that he does have some impairments and then figure out what his limitations are and the ALJ did not do that. Well, Consul, the letter that you refer to, if I read it correctly, says unfortunately you've not been able to establish a definite neurological diagnosis. Well, that's right. How could that be a diagnosis? When the doctors are trying to find a diagnosis, they mean they're trying to find some way to treat this plaintiff's impairments. They're not using the Social Security definition of diagnosis. The Social Security regulations require that there is a provable abnormality and he has shown that. Now, the fact that the doctors can't figure out what exactly is causing it is not required. The plaintiff does not need to show that. He's shown, objectively shown, abnormalities which cause limitations in his ability to work and that's what he needs to show. Thank you, Consul. Thank you. Thank you to both Consuls. The case just argued is submitted for decision by the court. The next case on calendar for argument is Hamlin v. Arnhart. Counsel, please approach. Please. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak